RADIO CORPORATION OF AMERICA et al.
v. TWENTIETH CENTURY RADIO
CORPORATION.

Circuit Court of Appeals, Second Circuit.
May 2, 1927.

No. 204.

1. Patents ⚏328—1,183,875, claims 1 and 2, for electric radio circuit, held valid and infringed.

Hartley patent, No. 1,183,875, claims 1 and 2, for electric circuit used in radio apparatus, *held* valid and infringed.

2. Patents ⚏328—1,334,118, for system of amplification of small currents, claims 1, 2, and 3, held valid and infringed.

Rice patent, No. 1,334,118, for a system of amplification of small currents, claims 1, 2, and 3, *held* valid and infringed.

3. Patents ⚏56—Structure not designed for same purpose, and not apparently useful for inventor's purpose, is not "anticipation."

A structure which is not designed for the same purpose, where no person using it would understand that it could be put to use in the way the inventor has found, is not an "anticipation."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

4. Patents ⚏167(1)—Court may look at specifications and drawings to determine meaning of elements in claims.

Court may always look at specifications and drawings to determine the characteristics and meaning of elements recited in claims.

5. Patents ⚏167(1¼)—Resort may be had to specifications to validate broad claim.

If a claim is broad, resort may be had, for the purpose of validating it, to the specifications.

6. Patents ⚏283(1)—That article is licensed under subsequent patent to one in suit does not avoid infringement.

That article is licensed under patent subsequent in date to patent in suit does not avoid infringement of patents utilized therein.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Radio Corporation of America and others against the Twentieth Century Radio Corporation for infringement of the Hartley patent, No. 1,183,875, and the Rice patent, No. 1,334,118, relating to radio apparatus. Decree for defendant. Plaintiffs appeal. Reversed.

Charles Neave, Stephen H. Philbin, and Abel E. Blackmar, Jr., all of New York City, for appellants.

William H. Davis, Willis H. Taylor, Jr., and R. Morton Adams, all of New York City, for appellee.

Before MANTON and MACK, Circuit Judges, and CAMPBELL, District Judge.

MANTON, Circuit Judge. The Hartley patent, No. 1,183,875, is for an electrical circuit used in a radio apparatus. It was applied for September 13, 1915, and granted May 23, 1916. The Rice patent is for a system of amplification of small currents. The application was filed July 31, 1917, and the patent granted March 16, 1920. The claims sued on are as follows:

Hartley Patent, No. 1,183,875.

[1] "1. An electrical network containing a thermionic amplifier having an input and output circuit, said output circuit being adjustably coupled to said input circuit to oppose the effect upon said input circuit of currents in said output circuit.

"2. In an electrical network containing an amplifier having an input circuit and an output circuit, said circuits being coupled to produce in said input circuit an effect due to currents in said output circuit, a further adjustable coupling of said circuits to oppose said effect upon said input circuit."

Rice Patent, No. 1,334,118.

[2] "1. The combination in a radio receiving system of an electron discharge amplifier having resonant grid and plate circuits and capacity coupling between said circuits, so arranged as to prevent the generation of oscillatory currents in said circuits which interfere with the reception of desired signals.

"2. The combination in a radio receiving

system of an electron discharge amplifier having grid and plate circuits containing inductances which are so arranged as to avoid any magnetic coupling between the two circuits and capacity coupling between said circuits so arranged as to prevent the generation of oscillatory currents in said circuits which interfere with the reception of desired signals.

"3. The combination in a radio receiving system of an electron discharge amplifier having resonant grid and plate circuits containing inductances which are so arranged as to avoid any magnetic coupling between the two circuits and capacity coupling between said circuits so arranged as to prevent the generation of oscillatory currents in said circuits which interfere with the reception of desired signals."

Appellee sold radio receivers, made by a manufacturing corporation, which are claimed to employ and infringe the patents in suit. The patents relate to means for controlling regenerative amplification in radio receivers and are used for the prevention of undesired oscillations resulting from a large amount of regeneration or feed back. A receiving apparatus in radio answers the purpose of intercepting radio waves sent out by a transmitting station. Waves thus broadcasted have a frequency and vibration which is estimated at from 500,000 to 1,500,000 cycles per second. Frequency above 10,000 or 20,000 cycles per second are called radio frequencies and those below audio frequencies. Vibrations at radio frequencies cannot be heard, while alternating currents of audio frequency can affect a telephone diaphragm, so as to cause audible sounds. The creation of waves of radio frequency alternating currents in the apparatus correspond to transmitted waves, and one of the requirements of receiving is the detection of these currents to obtain lower or audio frequency alternating currents and the production of signals from such audio frequency currents. The waves transmitted from a broadcasting station, consisting of voice, music, or other signal is called a carrier wave. The intercepting system consists of an antenna which intercepts the radio waves in which are thereby set up alternating currents of the same radio frequency or the transmitted wave.

In building up this intercepting circuit, the alternating currents caused by a particular broadcasting wave that is desired, the natural frequency of the circuit, is regulated or tuned by adjusting the capacity or the inductance of the circuit so that the natural

frequency of the circuit will correspond to the frequency of the desired currents. Thus the broadcasting station is tuned in. The tuned circuit will build up very substantially the intensity of the alternating currents applied to it which have the frequency to which the circuit is tuned. A circuit may be tuned by varying its capacity or its inductance or both. The radio frequencies set up in the antenna or the loop (which takes the place of the antenna) and then transferred to the receiver are generally amplified. They eventually must be rectified or detected, so that the signal variations or modulations which they carry can be separated from them and converted into audio frequency currents capable of operating a telephone or loud speaker. The reducing system comprises means for converting the audio frequency currents into perceptible indications such as sound waves. In broadcasting reception, the audio frequency currents cause the diaphragm of the telephone receiver or loud speaker to vibrate, thus creating sound waves.

The vacuum tube referred to in the radio apparatus is a three-electrode device called an audion. Marconi v. De Forest (C. C. A.) 243 F. 560. It consists of elements within an evacuated glass bulb, a filament heated by current from a low battery, and emits electrons of negative electricity which pass to the plate electrode. The filament is a "cathode" and the plate is an "anode." The plate circuit contains a source of high potential (B-battery) and such other elements as may be desired or required. The stream of electrons from the filament to the plate comprises this circuit. The grid electrode controls the electron stream and varies the amount of power delivered through the plate circuit by the battery. A small variation of electric potential applied to the grid and the tube may cause a larger, but otherwise identical, variation of electric power in the plate circuit.

A vacuum tube system may be employed as a detector or rectifier to separate signal variations from the radio frequency currents which carry them. A vacuum tube system may also be employed for amplification of the currents applied to the grid circuit, whether such currents are radio frequency currents or audio frequency currents.

As a means for controlling regenerative amplification in radio receivers, the Hartley patent comprised the provision of an audion system containing a tuned plate circuit with an auxiliary coupling whereby the effect of the grid plate capacity in the audion will be neutralized. A portion of the radio fre-

quency energy in the plate circuit is transferred back to the grid circuit in such a manner as to oppose the electromotive force impressed upon the grid of the tube by coupling, thus preventing oscillation. Hartley undertook the problem to reduce or eliminate the effect of the regenerative feed back. He says that the object of his invention was to provide means for overcoming or neutralizing the effect of the coupling, to the end that a greater amplification of input power might be obtained without resulting in stability of operation. And he pointed out that in the audion it is impossible to eliminate the coupling between the output and input circuits, and that his invention contemplates introducing still another electromotive force into the input circuit and so adjusting it as to amplitude and phase that it shall annul the effect of the electromotive force introduced by the first-mentioned unavoidable coupling inside the audion itself. He utilized the built-up radio frequency energy in the plate circuit by taking a portion of it, reversing it in direction, and applying this reversed energy to the grid circuit, so as to oppose the regeneration or amplifying energy fed back through the tube. His apparatus comprised the auxiliary circuit including the coil shown in Figs. I and II. Thereby radio frequency energy is taken from the plate circuit, reversed in direction, and transferred to the grid circuit by means of a magnetic (inductive transformer) coupling between coils 15 and 16 shown in Figs. I and II. The energy thus fed back opposes the energy fed through the tube by means of plate 13 and grid 12.

This invention comprises the prevention of oscillations by transferring from the plate circuit to the grid circuit, by a path around the tube, an electromotive force to oppose that caused by the internal coupling of the tube. His specific arrangement employs a neutralizing path around the tube, including the transformer, but without a condenser. He does not include the Rice neutralizing condenser hereinafter referred to. In this way he solved the problem of the prevention of oscillation throughout such a frequency range as is ordinarily desired in practice. He allowed for neutralization over a wide range without altering the arrangement of his circuit.

While Hartley disclosed broadly an auxiliary neutralizing circuit, but without capacity in that circuit, the Rice invention of the audion system was one whose grid plate capacity was neutralized by means of an auxiliary circuit containing inductance and capacity. It describes several arrangements embodying the invention. The specification describes several variants to be employed under certain conditions. He points out that the requisite capacity of neutralization can be obtained by the natural capacity between the coils, as well as by a physical condenser, so that the physical neutralizing condenser may be necessary. In operation, the radio frequency energy is built up in the plate circuit by means of the inductance coil and the condenser. One effect of tuning the plate circuit is to cause radio frequency energy to be transferred through the tube by means of the natural capacity between the plate and the grid. The natural capacity is indicated by the phantom condenser.

The chief reliance of the defense of anticipation is the Armstrong patent, No. 1,-113,149. Armstrong's invention was for building up radio frequency energy in the plate circuit, and to feed it back to the grid circuit in such a way as to supplement or add to the signal energy. This desired regenerative amplification was obtained by providing a radio frequency inductance coil in his plate circuit, which had the effect of building up radio frequency energy to be fed back from the plate circuit to the grid circuit by connection between the plate circuit and the grid circuit. Armstrong v. De Forest (C. C. A.) 280 F. 584. Armstrong established that a feed-back effect could be obtained by tuning the plate circuit. In Armstrong's arrangement, regeneration is controlled by adjustment of the device which controls it, as, for instance, the plate inductance to a point that the energy feed back through the tube, is not sufficient to cause oscillation. In neutralization, you start with an inductance in the plate circuit which is more than sufficient to produce oscillation, and then overcome the effect of the energy fed back through the tube by producing another path through which counter feed back is produced.

In Hartley's invention, he recognized the existence of the feed back and provides a circuit for neutralizing, comprising a connection between the plate and grid circuit, which include an inductance coil. Rice likewise recognized the feed-back effect, and points out that it can be effectively balanced over a wide range of frequency by the addition of a capacity to the neutralizing circuit. The Hartley and Rice inventions serve a different purpose than Armstrong's. Armstrong disclosed no means for preventing oscillation which resulted from a regenerative instrumentality other than varying

that instrumentality. The condenser he used is not capable of preventing oscillations, when added to such a circuit as Hartley and Rice were working with; that is, a tuned plate circuit. The Hartley and Rice patents are directed to a tube system containing in the plate circuit a radio frequency inductance coil which tends of itself to produce oscillations by feed back through the grid plate coupling to the tube.

Rice, in claims I and III of his patent, by specifying a tuned plate circuit, specifies the presence of an instrumentality tending of itself to reduce oscillation. On the other hand, Armstrong shows various arrangements for obtaining regenerative amplification. Nothing in his patent discloses an auxiliary neutralizing circuit. It is not sufficient to argue that an engineer may take the circuits of Armstrong's patent and by a selection of proper parts and arrangements accomplish the results of the patent in suit. Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; H. D. Smith & Co. v. Peck Stow & Wilcox Co. (C. C. A.) 262 F. 415.

[3] It is argued that the Richards patent, No. 1,105,688, anticipates claims I and II of the Hartley patent. But this relates to amplification of telephone or audio frequencies, and not to radio frequencies. The problem of neutralization did not exist in telephone systems, and the reason therefor is that the internal capacity of the audion is not effective, as at the low telephone audio frequency currents with the types of circuit which are used in telephone repeaters in connection with wire lines. No need exists in audio frequency systems for means to neutralize the internal capacities of audions. A structure which is not designed for the same purpose, where no person using it would understand that it could be put to use in the way the inventor has found, is not an anticipation. Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064; Clough v. Gilbert & Barker, 106 U. S. 166, 1 S. Ct. 198, 27 L. Ed. 138; Block v. Nathan Anklet Support Co. (C. C. A.) 9 F.(2d) 311.

[4] It was argued that the claims sued on are too broad, because they cover various earlier telephone arrangements. But these telephone arrangements had no means to neutralize the effects of a tube capacity, because there were no such effects in audio frequencies. These inventions have had a large commercial call, and the claims sufficiently protect when considered with the specifications. The court may always look at specifications and drawings to determine the characteristics and meaning of the elements recited in the claims. Winget Kickernick Co. v. Kenilworth Mfg. Co. (C. C. A.) 11 F. (2d) 1.

[5] The Hartley claims I and II call for a coupling of the output circuit to the input circuit, to impose the effect on the input circuit of currents in the output circuit. There is an inherent feed-back coupling in the audion. It is this coupling which provides the means for overcoming or for neutralizing. The claims relate to neutralization of inherent audion coupling for the prevention of oscillation. This contribution to the art is not seen in the prior patents. Claims I, II, and III of the Rice patent, read in the light of the specifications, each contains a capacity coupling between the grid and plate circuit, so arranged as to prevent the generation of oscillatory currents in said circuits which interfere with reception of the desired signals. Capacity couplings are made clear, both by the drawings and specifications, which show the neutralizing arrangement. What is meant by the generation of oscillatory currents is described as an oscillation caused by the grid plate capacity. If a claim is broad, resort may be had, for the purpose of validating it, to the specifications. Tompkins-Hawley-Fuller Co. v. Holden (C. C. A.) 273 F. 424; Fowler & Wolfe Mfg. Co. v. McCrum-Howell Co. (C. C. A.) 215 F. 905.

[6] The appellee's receiver is licensed under the Hazeltine patent, which is subsequent in date to the patent in suit. But this does not avoid infringement. Hammond v. Benzer Corp. (C. C. A.) 6 F.(2d) 760; Gordon v. Turco-Halvah Co. (C. C. A.) 247 F. 487. The appellee utilizes the Hartley invention and the Rice improvement. The magnetic coupling of the Rice invention is found in the appellee's receiver. The inductance coils in the grid and plate circuits are arranged to avoid any magnetic coupling between them. The appellee's receiver in each of its radio frequency stages has capacity coupling between the grid and plate circuits, so arranged as to prevent the generation of undesired oscillations. The inductance coils in these plate and grid circuits are arranged to avoid any magnetic coupling between them, being set at angles to each other for this purpose. The grid and plate circuits are tuned. The subject-matter of the three claims (Rice patent) in suit is embodied in the appellee's receiver, in each of its two radio frequency stages.

The patents are held to be valid in each

of the claims sued on, and the appellee is held to have infringed all.

Decree reversed, with costs.