## SMOKADOR MFG. CO., Inc., v. TUBULAR PRODUCTS CO.

Circuit Court of Appeals, Second Circuit. March 4, 1929.

No. 237.

Mitchell & Bechert, of New York City (John P. Bartlett and George H. Mitchell, both of New York City, of counsel), for appellant.

Gifford & Scull, of New York City (George F. Scull, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The complainant has for some time been engaged in the commercial development of ash stands which rest on the floor and have an ash tray at a point within convenient reach of the user, and a vertical tube attached to it for the purpose of conducting the ashes, burnt matches, and cigar stubs into a waste-receiving receptacle in the lower part of the stand.

The first of these smoker's stands, called the "Rock-a-by," or "Roly-Poly," sold under the trade-mark "Smokador," was made under United States patent No. 1,559,234, to Fleming, dated October 27, 1925, and was extensively sold. It was provided with a weighted, rocking base, fitted normally to hold the stand in a vertical position, and to return it to a vertical position when rocked. The base of this stand served both as a support and as a waste-receiving receptacle.

The patent in suit, No. 1,646,086, also was the result of Fleming's work in the same field as above, and represents an improvement in the mechanical features of ash stands. It adds to the former three-part unit, wherein an ash tray is supported on the upper end of a tube, with which a waste receptacle is connected at the bottom; the further element of a supporting skirt, forming a cavity sufficient to embrace the waste receptacle.

The specification, page 1, line 88, says:

"It will be observed that the waste-receiving receptacle 3 is indicated as being made of glass, and it is apparent at once that it is of the conventional shape of an ordinary fruit or preserve jar. Thus, the user may at any time readily observe to what extent the waste-receiving receptacle is loaded with waste, by simply lifting the stand and peering through said glass receptacle. Again, if the user should have the misfortune to break the jar, it may be very readily replaced for a few cents, or without any expense, if the user happens to have a similar fruit jar in his possession not in service."

It is true that the claims are not in terms limited to a receptacle for waste, made of glass; but mechanical advantages of such a structure are set forth in the above extract from the specification and other advantages in fact exist. If the patent is to stand, the word "glass" must be incorporated in the claims, so that they read "a glass waste-receiving receptacle," instead of "a waste-receiving receptacle." Such a limitation is necessary in view of the prior art, for not only did the Roly-Poly device manufactured under the earlier patent, No. 1,559,234, to Fleming, have all the elements of the patent in suit, except the skirt and the *glass* jar within it to receive the waste, but United States patent No. 1,237,014, to Botty & Prior, granted in 1917, shows an ash tray, a vertical tube descending to the base, and a drawer to receive and remove the ashes. This patent discloses in substance a supporting skirt, in which a drawer is inserted to remove the ashes in the same way that a removable glass jar is threaded in the patent in suit.

In United States patent No. 1,364,892, to Schulte & Weite, there is shown an ash tray, a tube descending to a waste receptacle at the base, which is enveloped by a skirt attached to the lower end of the tube. In the Schulte & Weite device, the ashes are emptied by a shutter in the bottom of the base, operated by a wire running down to the shutter from the top of the stand. It seems evident that the slight variations of the patent in suit from the prior structures do not merit a patent, unless the waste receptacle be limited to one composed of glass.

But the glass construction disclosed in the specification has manifest advantages. It renders the contents of the receptacle at once visible, without removal of the jar. In other words, a porter in a hotel can turn up the stand and see through the transparent glass whether any tobacco refuse is in the receptacle. If none is visible, he need not unscrew the jar, as he would have to do in the case of a stand that had not a transparent receptacle. The device manifestly saves time and labor. Moreover, a frangible substance like glass would not, we think, readily suggest itself for a receptacle, and such a substance never seems to have been used for the purpose prior to the time when Fleming embodied the idea in the patent in suit. Indeed, the first thought of such a receptacle might well have been negatived by the consideration that glass would expose to view the dirty contents of receptacles in stands that had been used since cleaning. The ordinary artisan thinks in terms of "use and wont." To substitute glass for a prior, and what we may justly regard as a more obvious, form of container, and to shield it from sight, except when the stand is turned up for examination, seems to us a patentable step. If the advantages of doing what Fleming accomplished had been already apprehended, the means to attain them would perhaps be too simple to deserve the name of invention. But the apprehension of the labor-saving, convenient, and neat device disclosed in the patent in suit involved more than the work of a routine mind.

█ It is true that the complainant has not put an ash stand made in accordance with the patent on the market, but this makes no difference, for the defendant has sold 1,000 of these ash stands. That is a substantial tribute by defendant to the value of the invention. Moreover, defendant obtained the idea of a glass jar from Murray, a former employee of complainant, who submitted a drawing showing a glass jar, made January 13, 1927, three weeks after the date of Fleming's application for the patent in suit. If the patent is of no merit, it is hard to see why defendant followed its teaching, and put a device on the market which admittedly infringed.

It is conceded that defendant paid Murray $1,000 for the so-called invention shown in his drawing embodying a glass receptacle for waste. There is also uncontroverted testimony that complainant gave Murray, early in 1925, and while he was still in its employ, a model ash stand having a glass receptacle (Exhibit 11). It is quite clear that the inventive thought on which defendant's infringing ash stands were based came directly from complainant, and that defendant, whether or not it was ignorant of the real origin of the idea, appreciated the value of introducing glass as a receptacle into ash stands, and was willing to pay to secure the assistance of Murray. Indeed, defendant's

treasurer testified: "I thought this glass jar receptacle was a good thing. It appealed to me very much."

All the patents of the prior art which we have discussed were cited against the patent in suit during its progress through the Patent Office, and it was granted over these references. The regular presumption of validity accompanying a patent thus gains added weight.

The claims should be limited to a glass receptacle, and this limitation may properly be made, where the claims as drawn are too broad, and the invention embodied in the claims as limited is disclosed in the specification. A meritorious invention disclosed in the specification should be saved, in spite of broad claims, by such a limitation. Fowler & Wolfe Mfg. Co. v. McCrum-Howell Co. (C. C. A.) 215 F. 905; Radio Corporation of America v. Twentieth Century Radio Corporation (C. C. A.) 19 F.(2d) 290.

We accordingly hold the patent valid and infringed.

The causes of action for infringement of trade-mark and for unfair competition need but slight comment.

About four years ago complainant began to use the words "Ashless Ash Stand" in connection with the fanciful term "Smokador" in marketing its stands. These words have neither been shown to have acquired a secondary meaning nor to have caused, or to be likely to cause, deception. The trademark under which complainant's goods have been sold was "Smokador," and defendant's mark was "Ashagon." The supplemental words "Ashless Ash Stand," used in connection with the trade-marks, were only descriptive of the several goods sold. They were not a valid common-law trade-mark, nor did they form any basis for a cause of action for unfair competition. Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co. (C. C. A.) 20 F.(2d) 298.

The decree is modified, so as to hold the patent in suit valid and infringed, and is otherwise affirmed.