Swan, District Judge.
This is a suit in equity, founded on the alleged infringement by defendant of the fourth claim of letters patent No. 147,422, granted to John H. Steiner, for an “improvement in chemical fire extinguishers.” The patent bears date February 10, 1874, and the application was filed January 5, 1874. The fourth claim of the patent is in these words:
“ (4) A chemical fire engine, consisting of a wheeled frame, provided with a generator or extinguisher, and with a hollow-journaled reel, N, the latter having its journal connected permanently to the generator by a pipe, M, and provided with a hose, 0, coupled to it, as shown and described.”
The patentee precedes the statements of the claims which he makes by the disclaimer:
“I am aware that a hollow-journaled reel such as used by me in this engine is not new, and therefore I lay no claim thereto, except in connection with the generator and the connecting pipe, as shown.”
The defense denies the originality of Steiner’s improvement and the infringement charged, and sets up twenty-six American patents of prior date to Steiner’s as anticipations of the latter’s patent, of which only three or four are insisted upon as material to the defense; and two British patents, neither of which is urged as embodying the improvement covered by Steiner’s patent. The American prior patents mainly relied upon by the defense are No. 102,431, to C. F. Pinkham, dated April 26, 1870, for a fire annihilator; No. 131,414, to Stillson and Kley, for improvement in chemical fire engines, dated September 17, 1872; No. 142,488, to O. R. Mason, for thawing ice from water or gas pipes, patented September 2, 1873; No. 142,637, for improvement in fire extinguishers, to F. Latte, patented September 9, 1873, on application filed January 6, 1873; and No. 146,386, to John Dillon, for improvement in fire extinguishers, issued on January 13, 1874, on application filed December 1, 1873. Upon the hearing there were offered in evidence, as showing the state of the art, British letters patent No. 100, granted to William Russ, dated January 12,1865, “for an improved apparatus for distributing liquid manure,” and No. 2,510, granted to Edward P. G. Headley, August 12, 1868, for “an improved hydraulic apparatus for watering streets, roads, gardens, and other places, extinguishing fires, attaching to fire engines, and other similar or analogous purposes.”
The first apparatus for the use of carbonic acid gas in the extinguishment of fires by a mingled stream of water and carbonic acid gas was the invention of William A. Graham, who filed his application December 27, 1851, upon which, July 9, 1878, letters patent No. 205,942, to his administrator, were issued. This had for its object “the extinguishing of fires in a more expeditious and effectual manner than has been attained by means heretofore used,” which it effected by the delivery of one stream, impregnated with and projected by carbonic acid *733 gas, generated substantially in the manner now in use, either from a fountain or generator mounted on wheels similar to those of common fire engines, or from a stationary tank, through fixed pipes or tubes, arranged through a building. All subsequent machines using the combination of carbonic acid gas and water for the extinguishment of fires are simply improvements, real or supposed, of Graham’s invention. As this agency can only be used beneficially in the extinguishment of in-» cipient fires, the desideratum in all apparatus of this kind is celerity and certainty, or, as put by Graham in his specifications: “In extinguishing fires, time is money; time is life.”
Every later effort towards the improvement of Graham’s invention has aimed to meet this need, and secure the prompt and efficient discharge of the mixed fluid as the perfection of its use for the end designed. Steiner’s improvement is in that direction, and is professedly a combination of old elements, though the defense denies it even this merit, insisting that it is a mere aggregation of well-known contrivances. Its patentability is further assailed on the ground that all its co-operating parts, even if it be held a combination of old elements, have been employed for like uses; and their adaptation to the fire extinguisher is not invention, but required only ordinary mechanical skill. While it is elementary that a new and useful combination of old elements entitles its originator to the protection of the patent law equally as if all the elements of his device were entirely new, yet the doctrine is qualified by the indispensable condition that the combination must be the result of invention, which requires the conception and development into practical working form of a new means or device for performing a useful function or functions. The conjunction of parts or mechanism for the production of the effect must be of the inventor’s own devising. He must conceive its construction as an original creation, not merely perceive the fitness of an existing contrivance to the required end. It must be the product of the constructive, not merely of the perceptive, faculties of the mind. This is simply stating in another form the settled rule of law that the application of a device to a new use is not invention. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not. The application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated. Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 494, 4 Sup. Ct. Rep. 220; Roberts v. Ryer, 91 U. S. 150.
There can be no doubt upon this record that the combination employed by Steiner insured greater celerity, certainty, and efficiency in the application of the fluid upon the fire by the pipe connection and coupling between the generator and the hollow-journaled reel, and thence into the hose wound upon the reel and permanently connected thereto, and necessarily, therefore, with the generator; and from the fact that the hose thus placed and connected permits the flow of the fluid *734 simultaneously therewith, and can be readily unreeled to any required length, without liability to kinking, and thus, by the turning of the waycock, the contents of the generator can be immediately discharged upon the fire at the will of the pipeman. A striking proof of the utility of the combination is found in the fact that its main features have been largely adopted since its introduction in the Steiner machine. The Adrian machine clearly uses the same means to the same ends as those employed in complainant’s. The apparent differences produced by the position of the reel, its generators, and the coupling and. pipe connections, and the absence of a reel case or covering, are formal, not substantial. If, therefore, Steiner’s improvement is a patentable device, and has not been anticipated by prior inventions, the case made by the pleadings and proofs entitles complainant to the relief prayed. We come now to that inquiry, and the examination of the American prior patents. There is nothing anticipatory of Steiner in the Pinkham patient. Its scope is limited to- a duplication of the generators, and the use of an issue or discharge pipe common to both, and connected to the generators by branch pipes furnished with stopcocks, by the use of which one generator can be refilled while the other is in use.' The reel or spool is used merely to carry the hose “when not required for use.” In the Stillson and Kley machine the hose is wound upon a solid-journaled reel, and is permanently attached to the discharge pipe leading to the generators. The discharge pipe communicates with both tanks or generators through cocks so arranged that when one is open the other may be closed, thus permitting the successive use of the generators. As ■compared with Steiner’s, the striking defect of the machine lies in the necessity of unreeling all the hose as a prerequisite to the discharge of the fluid. While this difficulty is in part obviated by winding the hose on the reel simultaneously from each end, the machine is not capable of such facile and expeditious use as.is Steiner’s. Indeed, the function of the reel in the Stillson and Kley engine seems to be only the carriage of the hose, not in any way to facilitate its manipulation by the pipemen, or to adjust its length to the exigencies of the occasion. The chief, if not the only, feature common to this and complainant’s improvement, is the permanent attachment of the hose to the discharge pipe. This machine does not suggest the advantage of Steiner’s.
In Latta’s machine the cylinder of the tank or generator is arranged and used “as a drum or spool upon which the leading hose that pro-needs from the extinguisher is reeled or wound.” The objection to this device is the liability of the opening from the generator into the discharge pipe to be left, by the unreeling of the hose,, above the water line of the contents of the generator, the effect of which would be to permit the escape of the gas alone, instead of using it as a force by which the fluid must be ejected. In its present form it is regarded as unreliable, and inferior to later devices, including Steiner’s. Dillon’s fire extinguisher is stationary, and consists of a partially tubular shaft, hung in -half bearings, and revolved by a crank. To the tubular end of the shaft is connected an ingress pipe, which, in its turn, is attached to the *735 water supply in a dwelling or other building. The hose is wire-lined, permitting the flow of water while coiled on the shaft, which is used as a reel. The evidence in this record carries back the date of Steiner’s invention to September, 1873, and therefore he was not anticipated by Dillon. This renders unnecessary comparison of the latter’s device with complainant’s. The Pinkham, Stillson and Kley, Latía, and Dillon machines being thus eliminated from the inquiry, the effect of the Mason patent and those of Russ and Headley remains to be considered. Mason applied for his patent May 10, 1873,—four months before the earliest date which can be assigned to Steiner’s alleged invention. His is a device for thawing ice from water or gas pipes, and in form and appearance is not unlike the reel and connections which Steiner employs. Examination of its parts reveals a still closer resemblance. His idea and mechanism were directed to thawing ice from water and gas pipes by means of a jet or stream of heated fluid injected against the frozen contents of the pipe. “To this end,” his specifications say, “the invention consists in combining a flexible pipe with a revolving reel or drum, the pipe being coiled upon the drum, the construction of parts being such that the heated fluid can be forced through said drum and any desired length of pipe.” The shaft of the reel, like Steiner’s, is hollow part of its length, and to this part one end of the flexible pipe coiled on the reel is connected, while the open end of the reel shaft is connected by a pipe to a force pump, which is used to force a hot stream through the pipe coiled on the reel, one end of which pipe" is thrust into the frozen water or gas pipe. “As the thawing out progresses, the stream of hot water can be made to follow up closely by unwinding the pipe from the drum; thus the heat can be applied just where the work is to be done.” The specifications further state: “It is evident that a reservoir of steam might be connected with the open end of the shaft, and carried into the water or gas pipe in the same manner as I introduce water through the pipe.” The claim of that patent is: “The combination of the flexible pipe with the reel or drum having the hollow shaft and coupling, through which the fluid is delivered to the pipe.”
It is admitted that this patent shows two elements of Steiner’s improvement, viz., the hollow-journaled reel, and the pipe permanently connecting with it. It is also admitted that “the wheeled frame provided with a generator or extinguisher, * * * and provided with a hose,” are old, and had been combined before the issue of the Steiner patent; and that the nozzle, with valve, was an old and well-known device, understood as an essential part of a hose when used for fire-extinguishing purposes. The combination claimed as the patentable merit of Steiner’s extinguisher is that of the hollow-journaled reel, with its connections to the generator, and the connection of the hose to the outlet to the hollow journal, and that thereby, “in an organized machine of that class of fire extinguishers, he secured by such organism useful results never before attained.” While Steiner’s device facilitates the manipulation of the hose, and the certain and speedy discharge of the *736 fluid, it is plain that the combination which produces these effects has its antitype in Mason’s machine, which itself is at least of questionable originality, and that Steiner has merely found a new use for the very mechanism of Mason, The latter’s suggestion that “a reservoir of steam might be connected with the open end of the reel shaft,” is, indeed, superfluous to prompt that idea. Equally patent is the attachment of the combination to the fire extinguisher. The use of the hose reel, the hose, nozzle, and connecting pipe in combination being old, and “the fact that water will flow through a hose wound on a reel if the diameter 'of the reel is large enough, and the curves or angles are not abrupt, being a matter of common knowledge, which no one can appropriate to his own use to the exclusion of the public,” as is said in Preston v. Manard, 116 U. S. 664, 6 Sup. Ct. Rep. 695, and, a fortiori, the known fact that water can be forced through a hose coiled on such a reel by the expulsive power of carbonic acid gas, left, in my judgment, no merit in Steiner’s device but the application of the elements of this combination to the fire extinguisher. The results he obtained by its use are the same in character as those obtained by Mason and the British' patentees Russ and Headley. The case strongly resembles those of Roller-Mill Co. v. Walker, 138 U. S. 124, 132, 11 Sup. Ct. Rep. 292; Electric Co. v. La Rue, 139 U. S. 606, 11 Sup. Ct. Rep. 670; Blake v. San Francisco, 113 U. S. 679, 5 Sup. Ct. Rep. 692. See, also, Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. Rep. 220, and cases there cited.
The argument is pressed that one effect of the hollow-journaled reel, the hose coiled thereon, and its connections, in combination, is to promote the perfect neutralization of the carbonic acid by the alkali, and diminish, if,it does not fully prevent, the liability of the discharge of free acid which may have escaped from the generator; that by the agitation of the fluid by the reel, and the retardation of its passage to the nozzle, occasioned by the coiled hose,- the acid and alkali are more thoroughly mingled. While this may be true, the fact remains that Steiner did not invent the instrumentality by which that result is effected; nor does he seem to have forecast, or even suspected, the effect. His specifications are barren alike of statement and intimation from which it can be inferred that he either sought or expected that advantage from the combination. Both on the ground, therefore, that this function of his device is not patentable, because the means used to produce it are old, and for the reason that the claim of the inventor cannot be expanded to include more than his application warrants, this argument cannot avail.
But, if wrong in the conclusion that there is practical identity in-the Mason and Steiner devices, the state of the art, as shown by the apparatus covered by British letters patent to Russ in 1865, and to Headley in 1868, seems to be conclusive that the very arrangement of-parts for which Steiner claims was embodied in those machines; Headley’s especially. He says in his specification, for “hydraulic apparatus for watering streets, etc., extinguishing fires, attaching to fire engines, and other similar and analogous purposes.” “Upon a suitable locomotive *737 frame, to be propelled by hand or otherwise, I mount a windlass or drum, the axis of which I make hollow. Upon this drum I wind any required length of flexible tube or pipe, one end of which I connect with the hollow axis of the drum upon which it is wound, and the free end of which tube or pipe I fit with suitable connections for attaching it to hydrants or standards supplying water under pressure. To the end or ends of the hollow axis or drum I attach suitable distributing media. The axis is fitted with a handle for winding the pipe, which runs off as the frame is moved, and on again when required. ” The mode of using the apparatus is as follows: “The end of the flexible pipe being connected to the hydrant or standard, the frame, windlass, and coil of pipe are moved, as required, to a greater or less distance, and distribute the water as the apparatus travels; no locomotive tank or other water container being necessary.” Russ’ improved apparatus for distributing liquid manure is much like Headley’s, except in particulars necessary to apply it to the special use for which it is designed. Both these machines seem to me to anticipate all that is embodied in both Steiner’s and Mason’s, and clearly to deprive both of any vestige of originality. These patents do not appear to have been called to the attention of Judge Morris, as appears from the transcript of the record in the case of Extinguisher Co. v. Holloway, 43 Fed. Rep. 306. The bill must be dismissed, with costs.