**LEEDS & NORTHRUP CO. v. DOBLE ENGINEERING CO.**

No. 4518.

District Court, D. Massachusetts.

Feb. 12, 1941.

114

George K. Woodworth, of Boston, Mass., for plaintiff.

Harrison F. Lyman and Fish, Richardson & Neave, all of Boston, Mass., for defendant.

BREWSTER, District Judge.

Plaintiff in this action seeks a declaratory judgment, declaring invalid Letters Patent of the United States No. 1,945,263, issued January 30, 1934 to Frank C. Doble, assignor to the defendant, or, if valid, that the plaintiff does not infringe. The defendant filed a counterclaim for infringement of the patent.

The cause was referred to a master, who upheld Claim 15 of the patent, the only one in question, but concluded that the plaintiff did not infringe.

■ Neither party questions the master's findings of fact. They will, therefore, be adopted as the findings of fact required by Rule 52(a) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The defendant only has objected, contending that as a matter of law the master erred in ruling that the plaintiff did not infringe. No objections have been filed by plaintiff. The single issue raised is whether the master properly read into Claim 15 certain limitations which he held were to be incorporated therein by implication.

1. The patent in suit shows a form of apparatus for testing in the field grounded insulation, such, for example, as bushings provided in oil circuit breakers. This apparatus provides means for determining the "power factor" of a circuit in which the insulation piece to be tested is included, thereby determining the degree of perfection or imperfection of the insulation provided by the bushing or other specimen under test. The use of the Doble tester allows bushings found defective in insulating value to be replaced or repaired before they break down in service and thereby cause damage to the system.

The Doble apparatus and the testing apparatus of the plaintiff are fully described and explained in the master's report. It is not necessary, in order to determine the issues presented, to consider to any great extent the complicated electrical principles involved.

2. Claim 15 reads as follows: "15. An apparatus for measuring in the field electrical qualities of insulation interposed between a grounded structure and a high tension terminal, comprising a source of alternating voltage adapted to be connected in circuit with said high tension termi-

nal and said grounded structure, measuring means interposed in circuit between said voltage source and one side of the insulation for taking measurements determinative of energy loss and current, and means for shielding said voltage source and its connection with said high tension terminal so as to divert their charging currents away from the measuring means."

3. In order to produce accurate results, Doble has provided in his apparatus a system of shields which may be designated as "internal charging current shielding." By this system the charging currents originating in the voltage source and the high tension leads are diverted away from the measuring instrument. Doble also provided an outer shield (38 of Fig. 1) concentric with and surrounding the shield (37) about the high tension lead (10), which outer shield is connected to ground. The outer shield is for the purpose of eliminating erroneous readings of the instrument due to the external electrostatic disturbances frequently found in the neighborhood of the insulation to be tested. This outer shield (38) acting in conjunction with the inner shield (37) also causes the capacitance between the guard (39)` and the ground to remain substantially constant.

4. Plaintiff's measuring devices involved in this controversy were described as plaintiff's "1935 set" and its "1936 set" in which different means for obtaining accurate readings in the presence of outside electrostatic disturbances are provided and plaintiff's means for obviating the effect of the variations of capacitance of the guard to ground are not the same as Doble's. Respecting these differences the master finds,—

"In both of Plaintiff's sets, the 1935 set and the 1936 set, provision is made for rendering the measuring instruments immune to errors caused by extraneous electrostatic fields, but Plaintiff accomplishes this result in a way quite different from that described in the Doble patent.

"In Plaintiff's 1935 set, instead of using the Doble grounded outer shields to conduct current induced by external fields to earth, Plaintiff uses a reversing switch which does not divert such currents from the measuring means but allows them to pass through the measuring means and the error is 'averaged out' by the reversing switch. * * * Plaintiff does not employ an outer shield surrounding the high tension lead in either of its sets. The only means in Plaintiff's 1935 set for eliminating the effect on the measuring instruments of external electric fields is the reversing switch which is independent of the relatively large capacitance used for eliminating the effect on said instruments of variations in the capacitance between guard and ground due to changes in the geometrical or physical position of the high tension lead with respect to ground and to the variation in the moisture content of the ground. The relatively large capacitance used in Plaintiff's 1936 set for the same purpose also is independent of the means employed therein for eliminating the effect on the instruments of external electric fields.

"In the Plaintiff's 1936 set also, no grounded outer shield is used to conduct currents induced by external fields to earth. Such currents pass through the measuring instruments but their effect is eliminated in the following manner: In the Plaintiff's 1936 set, instead of taking power from an ordinary alternating current supply line, a motor driven generator is used which delivers alternating current at a frequency different from that ordinarily used in commercial systems. The usual frequency in commercial systems is 60 cycles per second. The frequency supplied by Plaintiff's motor generator is 70 cycles per second. The measuring instruments are so constructed that they respond only to current of 70 cycle frequency. Charging currents from ordinary high voltage lines in the neighborhood, usually of 60 cycle frequency, therefore do not affect the readings of the measuring instruments, although they pass through the measuring instruments.

"In both the Plaintiff's 1935 set and its 1936 set, the means for eliminating the effect of external electrostatic disturbances are different from Doble's means (the outer shields), but they accomplish the same ultimate result of eliminating the effect on the measuring instruments of external electrostatic fields."

The master rules that the means employed by the plaintiff for overcoming external influences and securing constant capacitance did not come within the legitimate range of equivalents to which the defendant was entitled. I do not understand that this ruling is assailed.

Since the departures from the means disclosed in the patent, which are found in

the plaintiff's sets, related to an element not expressly included in Claim 15, the defendant contends that the plaintiff cannot escape the charge of infringement by showing such deviation.

5. The master in his report states:

"Both parties agree, and I rule, that the introductory clause of Claim 15: 'An apparatus for measuring in the field electrical qualities of insulation interposed between a grounded structure and a high tension terminal * * *' imports into the claim certain limitations. Limitations implied by the words 'in the field' are: (1) that the apparatus must have means to eliminate the effect of external electrostatic disturbances on the measuring instruments, and (2) that the apparatus must have means to maintain a constant capacitance between guard and ground. The measuring instruments are between guard and ground."

6. Notwithstanding this agreement, the defendant contends that the claim is not limited to the outer shield or to any specific means for adapting the apparatus to measuring insulation "in the field", but includes any and all means for accomplishing the same result of preventing inaccurate reading of the measuring instrument when used in combination with the features included in Claim 15, the defendant's argument being that the claim is for a subcombination and is to be differentiated from other claims which specifically include the outer shield (38).

The master refused to adopt this view and said:

"As has been stated, one of the conditions for the use of such measuring apparatus 'in the field' is that it must have some provision for eliminating the effect of electrostatic disturbances which are almost always encountered in the field. This is a vital part of the invention. * * * To hold that the Plaintiff's equipment is within the claim would in effect give the Defendant a patent for a result, so far as the limitation 'in the field' is concerned, which is not permissible. The Doble patent is entitled to cover the Doble structure and its equivalents, but is not entitled to cover all means for accomplishing the same result. Boyden Power-Brake Co. v. Westinghouse (Westinghouse v. Boyden Power-Brake Co.), 170 U.S. 537, 569, 18 S.Ct. 707, 42 L.Ed. 1136.

"Especially must general or all-inclusive terms be confined to the patentee's structure or its equivalent when used, as here, to define a salient or vital point of invention as distinguished from merely the general make-up of the association in which the vital point of the invention finds its usefulness. Davis Sewing Machine v. New Departure Mfg. Co., 6 Cir., 217 F. 775, at page 782.

"I rule that the words 'in the field' in claim 15 restrict the claim to Doble's outer shield or to equivalents thereof and that since neither the Plaintiff's 1935 set nor its 1936 set uses such shield or its equivalent, the Plaintiff has not infringed."

I am of the opinion that the conclusion reached by the master is required by the authorities, especially in view of the agreement of the parties. The defendant would distinguish the case of Boyden Power-Brake Co. v. Westinghouse (Westinghouse v. Boyden Power-Brake Co.), 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136, by calling attention to what the court there said about the first claim of the Westinghouse patent in suit, which included the particular and vital element, namely, the auxiliary valve, which the defendant had not copied. But, it may be noted that a considerable portion of the opinion was devoted to a consideration of the second claim, in which the element was read into it in order to save it from the established rule that the function of a machine is not patentable. The court observed (page 557 of 170 U.S., page 716 of 18 S.Ct., 42 L.Ed. 1136) that,—

"If the second claim be not susceptible of the interpretation that it is simply for a function, then the performance of that function must be limited to the particular means described in the specification for the admission of air from the train pipe to the brake cylinder. * * *

"In this view, it becomes unnecessary to express an opinion whether the second claim be valid or not, since, in the aspect of the case most favorable to the complainants, it is necessary to read into it something which is not found there * * *. In thus reading the specification into the claim, we can adopt no other construction than to consider it as if the auxiliary valve were inserted in the claim in so many words, and then to inquire whether the defendants make use of such valve, or its mechanical equivalent."

So far as the defendant's attempts to distinguish the Westinghouse case and the case of Davis Sewing Machine Co. v. New Departure Mfg. Co., 6 Cir., 217 F. 775, both cited by the master, on the ground that the defendant's outer shield was not a "salient or vital point of invention" the attempt must fail.

■ Even if Claim 15 be treated as a claim for a subcombination I find nothing in the record to compel the conclusion that the "true novelty or gist of the invention" resided in the internal charging current shielding system. On the contrary, the Patent Office history clearly indicates that Doble, in order to differentiate his apparatus from the earlier art, stressed the point that his invention was adapted for use "in the field" where it was necessary to provide means for overcoming the effect of extraneous electrostatic disturbances. To meet the references cited, upon which his claims were first rejected, he urged that these references related to apparatus useful only in making laboratory tests. In any event, the master has found on the evidence that the outer shield was the novel feature and was to be read into the claim. This finding is a finding of fact (Silsby et al. v. Foote, 14 How. 218, 14 L. Ed. 394), and the finding must stand inasmuch as it appears that it was not without evidence to support it.

■ In an appendix to the report, the master contrasts patent Claim 15 (which was application Claim 37) with application Claim 15, rejected on reference to prior patents and publications. The important difference was in the introductory clause into which the words "in the field" were introduced. The master has found, and the Patent Office files clearly reveal, that Doble's contribution to the art was an apparatus for testing insulation which embodied means to eliminate the effects of outside disturbing electrical current on the measuring instrument, and means to maintain a substantially constant capacitance. The parties have agreed that the words "in the field" import into the claim implied limitations. Application Claim 15 without these limitations was rejected. The defendant cannot now be heard to say that they must be ignored in the interpretation of patent Claim 15 as finally allowed. Schriber-Schroth Co. v. Cleveland Trust Co., 61 S.Ct. 235, 85 L.Ed. ——, decided Dec. 9, 1940. Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U.S. 38, 14 S.Ct. 28, 37 L.Ed. 989.

The master adds that his ruling "that the introductory clause of Claim 15 imports into the claim certain limitations is based in part on 'file wrapper estoppel', and in part on the mere presence of the limitations in the claim even if they had not been inserted to overcome a rejection, and the ruling that particular limitations are imported into the claim by the words 'in the field' is based on the principle that the meaning of general terms in a claim may be ascertained by reference to the specification. Boyden Power-Brake Co. v. Westinghouse (Westinghouse v. Boyden Power-Brake Co.), supra."

■ The defendant relies upon Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153, and other cases cited to the proposition that a combination may be claimed though its utility depends upon other parts of a machine or apparatus of which it constitutes a part. This rule applies when the invention relates to some device adapted for use with another, such as a grain binder with a reaper. Deering v. Winona, supra. But I do not understand that it applies where the situation requires that another element be included by necessary implication in order to save the patentability of the claim. Boyden Power-Brake Co. v. Westinghouse (Westinghouse v. Boyden Power-Brake Co.), supra; Consolidated Roller-Mill Co. v. Walker, 138 U.S. 124, 11 S.Ct. 292, 34 L.Ed. 920.

I have reached the conclusion that the objections to the master's report must be overruled and the report affirmed. The plaintiff may submit an appropriate decree for a declaratory judgment, and for dismissal of the counterclaim.