**ILLINOIS WELDING ACCESSORIES CO.
v. JOHNSON WELDING EQUIPMENT
CO. (JACKSON, Intervener).
No. 9061.**

Circuit Court of Appeals, Seventh Circuit.

May 20, 1947.

Clarence E. Threedy, of Chicago, Ill., and Thomas S. Donnelly, of Detroit, Mich., and Edward M. Harrington, of St. Louis, Mo., for appellant.

Cyril A. Soans and William E. Anderson, both of Chicago, Ill., Arthur Raisch, of Detroit, Mich., and Soans, Pond & Anderson, of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a judgment dismissing its complaint against defendants for infringement of Claims 1, 2, 3, 4, 5 and 6 of patent to Arthur J. Fausek and Irwing F. Fausek No. 2,056,045 issued September 29, 1936 on application filed September 30, 1935, and for unfair competition. We are concerned with the second charge only in case we determine that plaintiff has no right to sell the alleged infringing device. In other words, if we affirm the District Court's findings and conclusions upon the issue of validity, we must affirm also the judgment as to unfair competition.

The patent covers an electrode holding device used in electric arc welding, of the common tong type, including a pair of clamping jaws, the upper one being pivotally mounted on the lower one and movable on the pivot so as to spread the jaws apart when the handles are depressed, as in a pair of scissors. The first three claims embrace all the elements of a conventional device of such character, including a coil spring so positioned between the jaws to the rear of the pivot and in front of the handles as, when extended, to close the jaws into clamping relationship. When the handles are depressed, the spring likewise is depressed and when the jaws are closed, the spring is extended.

All the elements mentioned thus far are old. They were known in various arts and trades and employed in multiplicitous devices. The only element included in the combination which it is claimed is new and of such importance as to endow the entire combination with inventive quality is described in these words: "protective means for enclosing said coil spring, said protective means comprising a pair of telescopically arranged members formed of heat insulating material fixed to the respective jaws and movable relative to each other when one of said jaws is moved with re-

spect to the other." This language appears in Claim 1 and is substantially the same as that of Claim 2 and that of Claim 3, except that in the latter the "telescopically arranged members" are also described as cup shaped.[1] Thus the claim of invention as to these three claims must stand or fall upon the proposition that inclusion of a telescoping insulating closure about the spring brought about invention.

Claims 4, 5 and 6 cover a similar device. There the claim of invention, if valid, must rest in the provision describing a specific pivotal mounting of the two jaws.[2] In other words, the alleged novel element included in the combination described in these three latter claims is "a pivot element supported by said element (the fixed jaw) in transverse relation with respect to said fixed jaw and a curved seat formed on said movable jaw with which said pivot element contacts." This is the language of Claim 4 and that of each of Claims 5 and 6 is not substantially different. It is obvious that the two jaws of any tong-like device, in order to work at all, must be pivoted together; but, says plaintiff, inclusion, in the otherwise old combination, of the specific kind of pivot described resulted in such an improvement over others as to amount to invention. The District Court found each of the claims anticipated by the prior art and declared them invalid.

It will be seen that the claims of invention are very narrow and that if the addition of the alleged novel element of insulating the telescoping closure for the spring in Claims 1, 2, and 3 and that of the specific form of pivot called for by Claims 4, 5 and 6 created nothing novel or if the claims are

anticipated or represent merely the mechanical skill of the builder, patentable invention must be denied.

Brooks 165,062 taught that the coil spring on a pair of tongs could be housed in a telescoping cup, and Loebenstein 207,666 the idea of housing the spring in non-telescoping cups. Thornton 1,211,009 shielded his spring from radiant heat of the arc by wood or other insulating material. Williams 1,301,347 protected the coil spring of his device by the frame portion of the jaws. In his later patent 1,345,817, he again designated a shielding portion of the frame as protection for the spring. Knoss 1,363,515, in a tool for gripping and removing a fuse from an electrical outlet box, housed his spring in socket cups made of insulating material. Bush 1,422,830 disclosed a fuse-removing implement, the jaws of which were held in gripping relation by means of coil springs housed in a pair of cups. Raub 1,681,746 placed the spring of a clipper in telescoping channels, guarding them against "accidental entanglement or displacement." Bicsey 1,729,059 housed a coil spring in an electrode holder in wells formed in the jaw member to protect the spring against "splatter" and radiant heat. Nelson 1,807,004, in his soldering tongs, employed a coil spring seated in cups made of insulating material. Dreyer 1,812,142 housed his spring in an insulated tube in a tong-type electrode holder, saying that the spring is completely insulated at one end and throughout the greater portion of its length so "there is very little danger of damaging the spring due to short circuiting." Short, in Patent No. 1,628,926, shows the combination of the claims in suit except that he prescribed cups

---

[1] Claim 1 reads: An electrode holder comprising a pair of jaws, means for pivotally connecting one of said jaws to the other jaw, a coil spring associated with said jaws so as to impart relative movement thereto, and protective means for enclosing said coil spring, said protective means comprising a pair of telescopically arranged members formed of heat insulating material movable relative to each other when one of said jaws is moved with respect to the other jaw. Claims 2 and 3 differ only in the respects above noted.

[2] Claim 4 reads: An electrode holder comprising a fixed jaw and a movable jaw, means for pivotally connecting said fixed jaw to said movable jaw, said means comprising an element extended from said fixed jaw, a pivot element supported by said element in transverse relation with respect to said fixed jaw, and a curved seat formed on said movable jaw with which said pivot element contacts, and a coil spring associated with said jaws and adapted to impart movement to said movable jaw with respect to said fixed jaw. Claims 5 and 6 differ only in minor respects.

626

at each end of the spring, to hold and contain it, made of insulating material. He did not telescope the closures so as to protect the full length of the spring but did insulate them against short circuiting at their respective bases. Fausek, in an earlier patent 1,851,039, insulated the coil spring at each end by means of fiber washers and lined the housing with insulating cups of asbestos. He clearly taught the idea of shielding the spring from conducted heat and splatter. The Swedish patent to Edin 46,159 discloses a tong with handles and telescoping cups. This device is not an electrode holder and plaintiff contends, therefore, that the reference is non-analogous art. But we think its teaching lies within common knowledge of skilled mechanics and electricians.

In addition to these patents there was extensive evidence of prior printed publications, use and sale, some of which is attacked upon the ground that the art relied upon was not within the period of two years prior to the date of filing the application. However that may be, the evidence is clear as to what was to be found by one who examined the state of the art and illuminating upon the question of what one skilled in the art of producing a tong-shaped electrode holding tool could easily have discovered and, if diligent, would have fully learned. We think that it was common knowledge that in tong-shaped non-electrical devices in which springs are employed in compressing and extending the jaws, the springs might well be housed in a telescoping inclosure and that in electrical devices the housing of the springs should be made of insulating material. The delvers in the specific art involved were dealing with electro welding. The device is electrically connected by cables and when the welder brings the welding rod or electrode, clamped between the jaws, into engagement with the work-place, connected to the welding machine, a short circuit is effected and a flash or arc is established. Tremendous temperatures are created; molten metal is thrown up in a spray or fountain, termed "splatter," which is thrown so that it will strike the electrode holder and even the workmen's gloves and clothes. The tremendous heat created tends to destroy the electrode holder

so that its average life in continuous welding is about 40 hours. It is perfectly obvious that it is not desirable to have the electric current pass through the spring and that the spring itself should be protected not only from the current but also from the high temperatures. The patentee solved the problem by putting insulating material upon each of the two parts of the telescoping housing attached to the respective jaws. Was this invention? Remembering what was old in the art, it seems to us that it was not. Any skilled workman in the art, knowing that it was desirable to protect the spring from a current of electricity, "splatter" and heat, would readily appreciate that the spring should be housed in insulating material.

This is not to say, necessarily, that the prior art references included in this record are sufficient to constitute complete and full anticipation of everything that the patentees did, but it is to say that, with the knowledge of all that was old, any skilled workman would know that the telescoping housing, which was old, should, in this instance, be made of insulating material. This was common sense, not invention. Years ago the Supreme Court said in Reckendorfer v. Faber, 92 U.S. 347, 356, 23 L.Ed. 719: "An instrument or manufacture which is the result of mechanical skill merely is not patentable. Mechanical skill is one thing: invention is a different thing. Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable." To the same effect are Thompson v. Boisselier, 114 U.S. 1, 5 S.Ct. 1042, 29 L.Ed. 76; Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; and Hollister v. Benedict & Burnham Mfg. Co., 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901. More recently the court, in Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct .455, 458, 79 L.Ed. 1005, reaffirmed the doctrine as follows: "An improvement to an apparatus or method to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art. * * * The patentees brought together old elements, in a mechanism involving no

new principle, to produce an old result, greater uniformity of motion. However skillfully this was done, and even though there was produced a machine of greater precision and a higher degree of motion constancy, and hence one more useful in the art, it was still the product of skill, not of invention." All that was said in these and other decisions was reaffirmed in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 86 L.Ed. 58.

All that the Fauseks did was to make an advance plainly indicated by the prior art. At the most, they merely carried forward or extended the teachings of the prior art. The idea they expressed was suggested by the prior art and they merely carried it into effect by prescribing that the old telescoped housing should be of insulating material. In Cleveland Punch & Shear Works Co. v. E. W. Bliss Co., 6 Cir., 145 F.2d 991, 994, the court said: "The generalization that it is not permissible to aggregate several old devices to invalidate a patent * * is, of course, not applicable where the state of the art at the time of disclosure, is such as to make combination obvious." See also Keene v. New Idea Spreader Co., 6 Cir., 231 F. 701; Duer v. Corbin Cabinet Lock Co., 149 U.S. 216, 13 S.Ct. 850, 37 L.Ed. 707; Florsheim v. Schilling, 137 U.S. 64, 11 S.Ct. 20, 34 L.Ed. 574; Busell Trimmer Co. v. Stevens, 137 U.S. 423, 11 S.Ct. 150, 34 L.Ed. 719.

There remains the question of invention as to Claims 4, 5, and 6. These claims prescribe a specific form of pivoting the two jaws of the electrode holder. Of course pivots are old; they are essential to operation of any tong-like instrument; they are a basic and elementary necessity. This specific construction was directed to a loose pivoted hinge connection between the fixed jaw and the movable jaw of the device of the patent. When the spring is disengaged and removed from between the jaws, the handle can be easily slipped out from under the hinge pin, thus disconnecting the two jaws. In other words, it is a disconnectable hinge connection. The claims cover an electrode holder comprising the upper and lower jaws, pivoted together by a loose pivotal connection, retained pivotally con-

nected by a coil spring, which, when disconnected, permits one to take the jaws apart. We think that if this needed to be taught at all it was within the teachings of Dreyer 1,812,142. Then there is evidence of prior use and sale by the Lincoln Electric Company, the Dockson Corporation and others. Obviously any mechanic building a device such as this had the choice of various well-known pivot arrangements. We think, under the authorities cited, no invention lay in the selection of this specific method.

 We conclude that there is nothing in any of the six claims patentable over the prior art and that the claims in suit merely carry forward old ideas merely changed in proportion or degree and embracing additions and modifications that would suggest themselves to any skilled mechanic. This does not amount to invention. Schreyer v. Chicago Motocoil Corporation, 7 Cir., 118 F.2d 852, 857; Burt v. Evory, 133 U.S. 349, 10 S.Ct. 394, 33 L.Ed. 647; Consolidated Roller Mill Co. v. Walker, 138 U.S. 124, 11 S.Ct. 292, 34 L.Ed. 920.

The judgment of the District Court is affirmed.