## EMERSON ELECTRIC MFG. CO. v. CHICAGO ELECTRIC MFG. CO.

### No. 50 C 556.

United States District Court
N. D. Illinois, E. D.

April 14, 1953.

Kingsland, Rogers & Ezell, St. Louis, Mo., Casper W. Ooms, Chicago, Ill., for plaintiff.

Fred Gerlach, Chicago, Ill., for defendant.

PERRY, District Judge.

Plaintiff prosecutes this action for alleged infringement of Claims 1, 5 and 6 of a patent issued to E. J. Hardey, No. 2,456,-781 on December 21, 1948. The defendant defends on the grounds of invalidity and non-infringement.

The patentee states that "it is the object of the invention to provide a heater of the foregoing type which combines the delivery of radiant heat with the delivery of heated forced draft air currents.

"More particularly, it is an object to provide a series of heating elements having individual reflectors behind them, the reflectors being spaced to provide air flow paths between them, in combination with a blower disposed behind the reflectors to draw air in and force it outwardly between the reflectors, it being heated from them as it passes by."

This patent discloses and claims a portable "blower type radiant heater." It discloses a heater which includes a portable casing, housing spaced helical heating elements, extending across the open face of the casing, each of which has a reflector behind it. Behind the reflector is a fan which draws air into the casing and forces it forwardly so that it is heated as it passes about the outer surfaces of the reflector and through air passage ways defined between an adjacent reflector and between each reflector end and the casing. The reflectors extend around a portion of the heating elements and prevent cool air from impinging directly thereon which is intended to reduce a darkening of the heating elements and which is intended to produce high radiation of the heat and to create a psychological feeling of warmth. In order to achieve this psychological effect, the glowing coils are mirrored in the reflectors thereby providing a double image. The reflector backs are curved and may be formed into other suitable shapes. The fan is positioned to blow directly upon the reflector backs for the purpose of combining forced air heat with the radiant heat, which moves forwardly to the front of the casing.

The record before this Court clearly indicates that the alleged invention of the Hardey patent was born in a crowded art. During the course of these proceedings, the defendant has advanced numerous prior patents in support of its defense of invalidity. The Court has selected for discussion only those which it considers more pertinent and significant. In doing so, it does not intend to indicate that the remaining patents are not in any way material to the issue.

Bennett No. 485,283, a British patent, issued on May 19, 1938, which was not cited

by the Patent Office, embodies all essential elements of the patent in suit. It includes a box-like casing with an open front, a series of horizontal heating coils on rods, a bent or curved reflector behind each heating coil, and a fan behind the reflectors, driven by an electric motor and adapted to force air against the backs of the reflectors and through the horizontal passages or spaces between the edges of the reflectors to the front opening in the casing. According to this patent, the disposition of the reflectors is such as to radiate heat from the heating elements and also to assist in deflecting the cool air currents from the fan. In this British patent, the reflectors are cooled by the air from the fan, produce a glow, radiate heat from the glowing heating coils, and deflect some air forwardly through the spaces between the edges of the reflectors. The plaintiff, however, contends that the British patent does not anticipate the instant patent because the British reflectors are not so shaped and directed with respect to the heating element as to reflect heat from the elements forwardly to the front of the frame; nor are they spaced so as to provide air passages which can discharge air from the fan forwardly toward the front openings. It insists that "the small reflectors of the British patent reflect substantially no heat from the elements forwardly through the front of the frame, for it is obvious that radiant heat impinging against the small reflectors will be returned in the main to the heating coil rather than forwardly, only a very minute quantity of reflected radiant heat passing forwardly from the heater; air strikes the heating coils of the patent, reducing radiant heat and glow." Briefly, the plaintiff is pointing to the fact that the reflector sides in its patent are parallel and extended in length nearer to the front of the casing, thus resulting in the claimed advantages. The extension of the imperforate reflector sides beyond the heating element toward the front of the casing is not new with the patent in suit. Logan No. 1,986,350, Aukerman No. 2,106,700, and Ringwald No. 2,-131,484 teach constructions embodying an imperforate reflector behind a heating element, which serves to separate the radiant heat, directed forwardly by the reflector, from the air stream generated by the fan toward the front opening of the constructions. These patents also show the extension of the reflector sides beyond the heating element toward the front of the constructions. It should be noted that not one of the foregoing named patents was cited by the Patent Office during the prosecution of the plaintiff's patent.

On cross-examination, the plaintiff's expert witness admitted that Bennett teaches the use of reflectors in the back of heating coils with passages between the reflectors for the forward passage of air from a fan. He also admitted that Ringwald and Logan teach the use of reflectors which exclude the contact of air with the heating coil. The plaintiff, however, insists that its patent is a combination of old elements and modified reflectors so associated with the heating coils as to provide the "one step forward" by which the patentee achieved the long sought successful air radiant heater. The instant patent, according to the plaintiff's contention, involves a critical change in form of one element of the combination, to which should be accorded the dignity of invention. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527. According to the plaintiff, "the general form of the reflectors and their association with the heating coils protect the heating coils against impingement of air forced forwardly by the fan so that the coils remain a bright yellowish red, thereby supplying a high decree of radiant heat and satisfying the psychological warmth factor; reflected radiant heat is dispersed, not concentrated, which eliminates the objectionable 'hot spot' of radiant heaters; and 'double image' effects obtain in the mirroring of the coils in the reflectors, making the heating surfaces appear greater and warmer. Hence, Hardey's forced air radiant heater gives more radiant heat than any heaters of like type heretofore used and creates a strong psychological effect of warmth on the user."

■ At the trial, the Hardey and Bennett devices were demonstrated in open court. The Court observed that, generally,

the air coming from both fans appeared to be about the same. The Court also observed that the plaintiff's heater maintained a brighter glow and that a slight concentration of heat, referred to as the "hot spot" emanated from the Bennett device. With this demonstration before it, the Court has no doubt that Hardey achieved these slight improvements by means of the modified reflectors. The question of fact before the Court is whether this modification is such discovery as to rise to the dignity of invention. The Court has carefully considered the oral as well as demonstrative evidence and all exhibits and arrives at the view that the disclosures of the patent in suit lack invention. Bennett, Logan and Ringwald teach the use of a curved reflector. The modified reflector of the instant patent can be achieved by the contraction of the flared reflectors of Logan and Ringwald with the concomitant change in the degree of the reflector curve until the reflector sides extend parallel to each other beyond the heating element toward the front of the casing. The same modification can also be effected by the parallel extension of the Bennett reflectors beyond the heating elements toward the front of the casing. These changes and extensions would, in the Court's view, suggest themselves to any mechanic or engineer, skilled in the art, who had the same prior disclosures before him. Claims, which merely carry forward old ideas changed in proportion or degree and embracing additions and modifications that would suggest themselves to any skilled mechanic do not amount to invention. Schreyer v. Chicago Motocoil Corporation, 7 Cir., 118 F.2d 852; Illinois Welding Accessories Co. v. Johnson Welding Equipment Co., 7 Cir., 161 F.2d 624.

Removability of the heating unit from the casing was not novel in the patent in suit. The file wrapper indicates that the examiner refused to recognize any patentability in this attribute in the light of Fay et al. No. 2,303,447 and Booth No. 2,274,469. The later restrictive amendments to original Claim 7, which is now Claim 1, did not relate to this aspect of the claim. Jepson No. 2,371,832 which was not cited by the patent office, also teaches a heater unit, which is unitarily removable from the casing through a front opening in the casing.

■ The plaintiff places great emphasis upon the presumption of validity, which arises from the issuance of a patent. In view of the history of this patent, as reflected by the file wrapper, this presumption, in the Court's view, gives little comfort to the plaintiff. The application was filed on October 5, 1945, and the patent issued on December 21, 1948. On October 8, 1946, all claims were rejected as being unpatentable over the cited art, especially Jessup No. 1,942,758. On February 20, 1948, the examiner cancelled nine of fifteen claims; he rejected the remaining claims as being unpatentable over the cited art. Thereafter, the claims were limited in two separate amendments to the satisfaction of the examiner. The net result of these limitations was to distinguish the claims from the perforated reflectors in the Jessup patent by the use of "impervious" reflectors, and from Roser No. 1,908,559, which has reversely curved edges on the deflectors, by the use of "side walls directed forwardly of the casing" or "side edges extending forwardly to the front opening." The instant patent also discloses rounded reflectors which distinguish them from the V-shaped reflectors or shields of Jessup. All these features, however, were suggested by the more pertinent disclosures of Bennett, Ringwald and Logan, none of which was cited by the Patent Office. The presumption of validity, which arises from the issuance of the patent, cannot be permitted to stand as against the pertinent prior art disclosed by this record, which was not before the patent office. Moran v. Protective Equipment, Inc., 7 Cir., 84 F.2d 927; Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., Inc., 7 Cir., 111 F.2d 880.

■ The plaintiff also stresses the alleged commercial success of its device. There is a dispute as to whether this success can be attributed to the Hardey construction alone. In view of the foregoing analysis, there is no need to discuss this point. National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d

26. Furthermore, it must be remembered that commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

■ Accordingly, it is the view of this Court that Claims 1, 5 and 6 of the patent in suit are invalid for lack of invention, and that therefore the complaint should be dismissed.